# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

IN RE:  IOWA READY-MIX
CONCRETE ANTITRUST
LITIGATION

RANDY WATERMAN, FRANK
AUDINO CONSTRUCTION, INC.,
SIOUX CITY ENGINEERING CO.,
CITY OF LE MARS, IOWA, and
SIOUX CONTRACTORS, INC., on
behalf of themselves and all others
similarly-situated,

        Plaintiffs,

vs.

GCC ALLIANCE CONCRETE, INC.,
SIOUXLAND CONCRETE
COMPANY, VS HOLDING
COMPANY, f/k/a ALLIANCE
CONCRETE, INC., GREAT LAKES
CONCRETE, INC., STEVEN KEITH
VANDEBRAKE, KENT ROBERT
STEWART, CHAD VAN ZEE, and
TRI-STATE READY-MIX, INC.,

        Defendants.

No. C 10-4038-MWB
(CONSOLIDATED CASES)

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED CLASS
ACTION COMPLAINT AND
AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT**

_____

# TABLE OF CONTENTS

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        *1. Product and parties* . . . . . . . . . . . . . . . . . . . . . . 4
        *2. Alleged antitrust violation* . . . . . . . . . . . . . . . . . . 6
        *3. Alleged fraudulent concealment* . . . . . . . . . . . . . . . 8
        *4. Alleged damages* . . . . . . . . . . . . . . . . . . . . . . . . 9
        *5. Relief requested* . . . . . . . . . . . . . . . . . . . . . . . . . 10
    *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        *1. Original complaint and consolidation of related cases* . . . . 10
        *2. Selection of interim class counsel* . . . . . . . . . . . . . . 11
        *3. Further pre-answer proceedings* . . . . . . . . . . . . . . . 12
        *4. The motions to dismiss* . . . . . . . . . . . . . . . . . . . . 12
        *5. Amendment of the complaint and renewal of the motions to*
           *dismiss* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    *A. Standards For Dismissal Pursuant To Rule 12(b)(6)* . . . . . . . . 14
    *B. The Pleading Of The Antitrust Conspiracy* . . . . . . . . . . . . . 17
        *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . 17
           *a. The defendants' arguments* . . . . . . . . . . . . . 17
           *b. The plaintiffs' response* . . . . . . . . . . . . . . . 19
           *c. The defendants' reply* . . . . . . . . . . . . . . . . 20
        *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
           *a. Pleading of an antitrust conspiracy* . . . . . . . . . 21
           *b. Absence of sufficient factual allegations* . . . . . . 22
        *3. Dismissal or leave to amend* . . . . . . . . . . . . . . . . 26
    *C. The Pleading Of The Plaintiffs' Standing* . . . . . . . . . . . . . . 30

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**P**urchasers of ready-mix concrete brought this class-action lawsuit against producers and sellers of ready-mix concrete and certain of their officers, directors, owners, and employees who have pleaded guilty to criminal antitrust offenses, alleging an antitrust conspiracy to suppress and eliminate competition by fixing the price of ready-mix concrete in the "Iowa region." The plaintiffs seek treble damages, costs of suit, attorneys' fees, and injunctive relief under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, for the injuries they and putative class members allegedly sustained from the defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. The defendants have moved to dismiss the plaintiffs' complaint on two grounds: insufficient pleading of a factual basis for the plaintiffs' standing and insufficient pleading of a factual basis for the purported antitrust conspiracy among all of the defendants. One defendant has moved to dismiss on the further ground that it withdrew from any purported conspiracy when it transferred all of its assets to a co-defendant in January 2008, and there are no allegations of activity of the purported conspiracy in the preceding two years. The plaintiffs contend that the defendants' arguments understate the reasonable inferences from the facts alleged and are inconsistent with controlling law.

## I. INTRODUCTION

### A. Factual Background

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Thus, the factual background presented here is based on the plaintiffs' allegations in their December 21, 2010, Amended Consolidated Class Action Complaint (docket no. 177). The Amended Consolidated Complaint is the appropriate pleading to consider, even though

it was filed after the pending motions to dismiss, because, as explained in more detail, below, the parties asserted that their motions to dismiss and resistances to them applied with equal force to the Amended Consolidated Complaint.

### 1. *Product and parties*

At the center of this antitrust litigation is "ready-mix concrete," which the plaintiffs allege is a product comprised of cement, sand, gravel, water, and occasionally additional additives, which can be made on demand and shipped to work sites by concrete mixer trucks. Amended Consolidated Complaint, ¶¶ 7(c), 22. It is made on demand at batch plants, where the proportions of input materials are measured, combined with water in a rotating drum mounted on a truck, and then mixed in the truck's drum on the way to the construction site. Because the addition of water begins an irreversible chemical reaction, and because the concrete is poured directly at the construction site, truck arrival must be timed so that the concrete hardens at the appropriate time. *Id.* at ¶ 23. The strength of ready-mix concrete, measured in pounds per square inch (psi), is determined by the amount of water added. *Id.* at ¶ 24. Ready-mix concrete, which is sold by the cubic yard, is used principally in commercial, governmental, and residential construction projects, including sidewalks, driveways, bridges, tunnels, and highways. *Id.* at ¶¶ 25-26. Because ready-mix concrete is a major and necessary component of commercial, governmental, and residential construction, a small but significant, non-transitory increase in the price of ready-mix concrete will not cause construction companies to switch to a different construction material, even if such a material is available and compatible with the needs of a given construction job. *Id.* at ¶ 29. Ready-mix concrete is interchangeable across manufacturers. Although construction projects can be bid under various concrete specifications, the plaintiffs allege that all of the defendant producers and sellers have the equipment and expertise to meet these specifications. *Id.* at ¶ 32.

The named plaintiffs here are an individual (Randy Waterman), three construction companies (Frank Audino Construction, Inc., Sioux City Engineering Co., and Sioux Contractors, Inc.), and a municipality (the City of Le Mars, Iowa). They each allege that they purchased ready-mix concrete directly from one or more of the defendants during the "class period," defined as from at least January 1, 2006, through at least April 26, 2010. *Id.* at ¶¶ 7(b), 8-12. The named plaintiffs do not, however, specify from which one or more defendants each of them purchased ready-mix concrete. The plaintiffs also seek to represent a class, defined as "includ[ing] all Persons who purchased Ready-Mix Concrete directly from any of the Defendants or any of their co-conspirators, or any predecessors, parents, subsidiaries, or affiliates thereof, at any time during the Class Period, but excluding Defendants, their co-conspirators, their respective predecessors, parents, subsidiaries, and affiliates, and federal government entities." *Id.* at ¶ 7(a).[1]

The corporate defendants (GCC Alliance Concrete, Inc.; Siouxland Concrete Co.; VS Holding Co., formerly known as Alliance Concrete, Inc.; Great Lakes Concrete, Inc.; and Tri-State Ready-Mix, Inc.) are all allegedly producers and sellers of ready-mix concrete and allegedly produced and sold ready-mix concrete to members of the putative

---

[1]The named plaintiffs also allege that the exact size of the class is unknown, but that it numbers at least in the hundreds, and that the trade and commerce involved amounted to at least tens of millions of dollars. They also allege that their claims are typical of those of putative class members generally, as all arise from the same conduct; that they will fairly and adequately represent the interests of the class, because they are represented by competent counsel and their interests coincide with and are not antagonistic to those of the putative class; that common questions of law and fact (which they list) predominate over any questions affecting only individual class members; that a class action is superior to any other available method for adjudication of this controversy; and that final injunctive relief is appropriate with respect to the class as a whole. Amended Consolidated Complaint at ¶¶ 34-41.

class. *Id.* at ¶¶ 13-16, 19. The individual defendants are Steven Keith VandeBrake, who was allegedly an officer, director, employee, or partial owner of GCC Alliance and one or more of its predecessors during the class period; Kent Robert Stewart, who was allegedly an officer, director, and/or employee of Great Lakes during the class period; and Chad Van Zee, who was allegedly an officer, director, and/or employee of Tri-State during the class period. *Id.* at ¶¶ 17-18, 20. The plaintiffs allege that various other persons, firms, and corporations have performed acts in furtherance of an antitrust conspiracy, although they are not named in the Amended Consolidated Complaint. *Id.* at ¶ 21.

### 2. *Alleged antitrust violation*

The plaintiffs allege that, during all or part of the class period, the defendants and their co-conspirators produced and/or sold ready-mix concrete in a continuous and uninterrupted flow of interstate commerce to purchasers in the United States, including without limitation purchasers in the States of Iowa, Minnesota, South Dakota, and Nebraska. The plaintiffs allege that these business activities substantially affected interstate trade and commerce. Moreover, the plaintiffs allege that the ready-mix concrete produced and sold by the defendants is comparable to and interchangeable with the ready-mix concrete produced and/or sold by their competitors. *Id.* at ¶ 33.

The plaintiffs allege that, throughout the class period, the defendants and their co-conspirators engaged in a continuing combination and conspiracy in unreasonable restraint of trade and commerce in ready-mix concrete in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. *Id.* at ¶ 42. They allege that this combination and conspiracy consisted of agreements, understandings, and concerted action among the defendants and their co-conspirators, the substantial objective of which was to raise and maintain at artificially high levels the prices of ready-mix concrete. *Id.* at ¶ 43. They

allege that, for the purpose of forming and effectuating their combination and conspiracy, the defendants and their co-conspirators "did those things which they combined and conspired to do, including, among other things, discussing, forming and implementing agreements to raise and maintain at artificially high levels the prices for Ready-Mix Concrete." *Id.* at ¶ 44. Somewhat more specifically, they allege that, throughout the class period, the defendants and their co-conspirators conspired to set and reached agreements to set agreed-upon prices, to set agreed-upon price increases, and to submit non-competitive and rigged bids for ready-mix concrete sold in the Northern District of Iowa and elsewhere. *Id.* at ¶¶ 51-52. The plaintiffs allege that, as a result of the combination and conspiracy between the defendants and their co-conspirators, the prices of ready-mix concrete paid by the plaintiffs and the putative class members were artificially sustained or increased and that the conduct of the defendants and their co-conspirators was undertaken for the purpose and with the specific intent of raising and maintaining prices of ready-mix concrete and eliminating competition, in *per se* violation of Section 1 of the Sherman Act. *Id.* at ¶¶ 53-54. The plaintiffs allege that the individual defendants have each pleaded guilty to federal criminal antitrust charges in this court and have each admitted under oath to entering and engaging in a combination and conspiracy with certain competitors to suppress and eliminate competition by fixing prices and rigging bids for sales of ready-mix concrete. *Id.* at ¶¶ 45-50.[2]

---

[2]The plaintiffs allege that defendant VandeBrake pleaded guilty to violation of 15 U.S.C. § 1, pursuant to a plea agreement, in *United States v. VandeBrake*, No. CR 10-4025-MWB (N.D. Iowa), on May 4, 2010, and admitted under oath that he engaged in a conspiracy to suppress and eliminate competition by fixing prices and rigging bids for sales of ready-mix concrete by, *inter alia*, (i) engaging in discussions concerning price increases for the conspirators' price lists for ready-mix concrete; (ii) agreeing during those
(continued...)

### 3. *Alleged fraudulent concealment*

The plaintiffs also allege that, throughout the class period, the defendants and their co-conspirators intended to and did affirmatively and fraudulently conceal their wrongful conduct and the existence of their antitrust conspiracy from the plaintiffs and other putative class members and intended that their communications with each other and their resulting actions be kept secret from the plaintiffs and other putative class members. *Id.* at ¶ 55. The plaintiffs also allege that the defendants' illegal price fixing conspiracy is, by its

---

[2](...continued)
discussions to raise prices on their respective price lists for ready-mix concrete; (iii) engaging in discussions concerning project bids for sales of ready-mix concrete; (iv) agreeing during those discussions to submit rigged bids for sales of ready-mix concrete at collusive and noncompetitive prices; (v) submitting bids and selling ready-mix concrete at collusive and noncompetitive prices; and (vi) accepting payment for sales of ready-mix concrete at collusive and noncompetitive prices. Amended Consolidated Complaint at ¶¶ 45-46.

The plaintiffs allege that defendant Stewart pleaded guilty to violations of 15 U.S.C. § 1, pursuant to a plea agreement, in *United States v. Stewart*, No. CR 10-4028-MWB (N.D. Iowa), on May 24, 2010, and admitted under oath that he engaged in a conspiracy to suppress and eliminate competition by fixing prices and rigging bids for sales of ready-mix concrete by, *inter alia*, (i) engaging in discussions concerning project bids for sales of ready-mix concrete; (ii) agreeing during those discussions to submit rigged bids at collusive and noncompetitive prices to customers; (iii) submitting bids and selling ready-mix concrete at collusive and noncompetitive prices; and (iv) accepting payment for sales of ready-mix concrete at collusive and noncompetitive prices. *Id.* at ¶¶ 47-48.

The plaintiffs allege that defendant Van Zee pleaded guilty to violations of 15 U.S.C. § 1, pursuant to a plea agreement, in *United States v. Van Zee*, No. CR 10-4108-MWB (N.D. Iowa), on December 6, 2010, and admitted under oath that he engaged in a conspiracy to suppress and eliminate competition by fixing prices and rigging bids for sales of ready-mix concrete by, *inter alia*, (i) engaging in discussions to fix prices for sales of ready-mix concrete; (ii) agreeing during those discussions to sell ready-mix concrete at collusive and noncompetitive prices to customers; and (iii) accepting payment for sales of ready-mix concrete at collusive and non-competitive prices. *Id.* at ¶¶ 49-50.

nature, inherently self-concealing and that the affirmative actions of the defendants and their co-conspirators were wrongfully concealed and carried out in a manner that precluded detection. Somewhat more specifically, the plaintiffs allege that the defendants discussed and formed their anticompetitive agreements during secret meetings and conversations; that no one other than the co-conspirators was invited or present at these meetings or conversations; and that the defendants conducted these meetings and conversations in secrecy to prevent the discovery of their conspiracy by members of the putative class. *Id.* at ¶ 56.

The plaintiffs allege that, by virtue of the fraudulent concealment by the defendants and their co-conspirators, the running of any statute of limitations has been tolled and suspended with respect to any claims that the plaintiffs and the other putative class members have as a result of the unlawful contract, combination, and conspiracy alleged in their Amended Consolidated Complaint. *Id.* at 57. They also allege that they could not have discovered the combination and conspiracy alleged in their Amended Consolidated Complaint at any earlier date by the exercise of reasonable due diligence, because of the deceptive practices and techniques of secrecy employed by the defendants and their co-conspirators to avoid detection of and affirmatively to conceal their actions. *Id.* at ¶ 58. Thus, they allege that they were unaware that prices for ready-mix concrete had been artificially raised and maintained as a result of the wrongful conduct as alleged in their Amended Consolidated Complaint until at least the filing of the criminal Information against defendant VandeBrake. *Id.* at ¶ 59.

### 4. *Alleged damages*

The plaintiffs allege that, as a direct result of the unlawful conduct alleged in their Amended Consolidated Complaint, prices for ready-mix concrete sold by the defendants and their co-conspirators were fixed and maintained at artificially high and noncompetitive

levels, that the plaintiffs and the putative class members were not able to purchase ready-mix concrete at prices determined by free and open competition and, consequently, that they have been injured in their business and property in that, among other things, they have paid more for ready-mix concrete than they would have paid in a free, open, and competitive market. The plaintiffs allege that, as a result of the defendants' wrongful conduct, they and the other putative class members have suffered substantial damages in an amount to be determined at trial. *Id.* at ¶ 60.

### 5. *Relief requested*

The plaintiffs seek extensive relief, consisting of the following: (1) certification of a class action pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure; (2) declaratory judgment that the defendants and their co-conspirators engaged in an unlawful combination and conspiracy in violation of 15 U.S.C. § 1; (3) injunctive relief from such violations; (4) declaratory judgment that the defendants and their co-conspirators are jointly and severally liable for treble damages resulting from their conduct; (5) judgment for treble damages, costs, expenses, and attorneys' fees; (6) pre- and post-judgment interest; and (7) such other relief as the court deems just and proper. *Id.* at Request For Relief, ¶¶ A-G.

## B. Procedural Background

### 1. *Original complaint and consolidation of related cases*

Plaintiff Randy Waterman filed the original Class Action Complaint (docket no. 2) in this matter on May 4, 2010, naming only VS Holding Company, formerly known as Alliance Concrete, Inc., and Steven Keith VandeBrake as defendants. Waterman filed a First Amended Class Action Complaint (docket no. 6) on May 20, 2010, adding GCC

Alliance Concrete, Inc., Siouxland Concrete Company, Great Lakes Concrete, Inc., and Kent Robert Stewart as additional defendants.

After similar actions had been filed by other plaintiffs against GCC Alliance Concrete, VandeBrake, and other defendants, the plaintiffs in three such cases moved on May 25, 2010, to consolidate those three cases and two others. *See* Motion (docket no. 14). In an Order (docket no. 24), filed June 10, 2010, Chief Magistrate Judge Paul A. Zoss consolidated for all purposes ten related cases and required that all filings in the consolidated cases be made in Case No. C10-4038-MWB utilizing the caption *In re: Iowa Ready-Mix Concrete Antitrust Litigation*. An eleventh, twelfth, thirteenth, and fourteenth case were consolidated into Case No. C 10-4038-MWB on June 11, 14, and 15, 2010, and July 1, 2010, respectively. *See* Orders (docket nos. 32, 34, 40, and 81).

### 2.    *Selection of interim class counsel*

On June 15, 2010, pursuant to an agreement of the parties, the undersigned entered an Order (docket no. 47) establishing procedures for selecting interim class counsel and liaison counsel. That Order required counsel seeking such appointment to file a motion and memorandum by June 24, 2010; required responses by July 1, 2010; and set a hearing on the motions for July 9, 2010. On June 22, 2010, the undersigned filed an Order (docket no. 70) with an attached e-mail to further clarify the court's procedures for the "auction" to determine lead counsel and set a deadline for the filing of any objections. Five motions for appointment of lead and liaison counsel were filed by various plaintiffs on June 24, 2010. *See* Motions (docket nos. 72-76). After the "auction" on July 9, 2010, by Order (docket no. 100), the court appointed Gregory Hansel (Preti Flaherty) and Irwin Leven (Cohen & Malad) as co-lead interim counsel and Mark Zaiger (Shuttleworth & Ingersoll) as interim liaison counsel.

### 3. *Further pre-answer proceedings*

On June 26, 2010, lead counsel filed a Consolidated Class Action Complaint (docket no. 104). On August 17, 2010, Judge Zoss entered a Stipulated Scheduling Order And Discovery Plan (docket no. 116), which, *inter alia*, set a deadline of September 17, 2010, for answers or other responses to the Consolidated Class Action Complaint; a deadline of April 15, 2011, for motions to add parties and to amend pleadings; a deadline of March 1, 2011, for a motion for class certification; and a trial ready date of April 30, 2012. On August 25, 2010, plaintiffs Plymouth County, Iowa, and Sioux County, Iowa, dismissed, without prejudice, their claims against defendant Grupo Cementos de Chihuahua, S.A.B. de C.V. *See* Docket no. 138. Similarly, on August 27, 2010, plaintiffs Strawn Construction Co., Strawn Contruction Services, Inc., Le Mars Public Storage, Inc., City of Le Mars, Iowa, Vance Greel, Plymouth County, Iowa, and Sioux County, Iowa, dismissed, without prejudice, their claims against defendant Northwest Ready-Mix Concrete, Inc. *See* Docket no. 139. On September 13, 2010, the undersigned filed an Order Setting Trial, Final Pretrial Conference, And Requirements For Final Pretrial Order (docket no. 145), setting trial to begin during the two-week period beginning on May 7, 2012.

### 4. *The motions to dismiss*

On September 17, 2010, five of the defendants filed the Motions To Dismiss now before the court. Those motions are the following: defendant GCC Alliance Concrete's Motion To Dismiss Plaintiffs' Consolidated Complaint (docket no. 149); defendant Steven Keith VandeBrake's Motion To Dismiss Plaintiffs' Consolidated Complaint (docket no. 150), incorporating by reference the arguments asserted by GCC Alliance in its motion; defendant VS Holding's Motion To Dismiss (docket no. 151), also joining in GCC Alliance's Motion To Dismiss and adding that it does not even operate a ready-mix

12

concrete business, because its predecessor (Alliance Concrete, Inc.) transferred all of its assets (including its name) to GCC on January 14, 2008; and defendant Great Lakes Concrete's and Kent Stewart's Motion To Dismiss Plaintiffs' Consolidated Complaint (docket no. 153). Also on September 17, 2010, defendant Siouxland Concrete Company filed an Answer (docket no. 152), admitting most of the plaintiffs' allegations, but asserting, in essence, that the plaintiffs are not entitled to the relief they seek and that Siouxland Concrete is an antitrust leniency applicant pursuant to § 213 of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004. After an extension of time to do so, the plaintiffs filed an Omnibus Opposition To Defendants' Motions To Dismiss (docket no. 163) on October 11, 2010. On October 21, 2010, defendant GCC Alliance Concrete filed a Reply (docket no. 167), defendant VS Holding filed a separate Reply (docket no. 168), and Great Lakes Concrete filed a Reply (docket no. 169) joining in GCC Alliance Concrete's Reply.

### 5. *Amendment of the complaint and renewal of the motions to dismiss*

By Order (docket no. 176), filed December 2, 2010, the court granted the plaintiffs leave to file an Amended Consolidated Complaint, and the plaintiffs, therefore, filed their Amended Consolidated Class Action Complaint (docket no. 177). That Amended Consolidated Complaint did not moot the defendants' motions to dismiss, however, for several reasons. First, the Amended Consolidated Complaint contained no substantive changes, it merely added defendants Tri-State Ready-Mix, Inc., and Chad Van Zee. Second, each of the original defendants filed a notice that its prior motion to dismiss applied with equal force to the Amended Consolidated Complaint. *See* GCC Alliance Concrete's January 6, 2011, Notice That Its Pending Motion To Dismiss And Briefing In Support Apply To Plaintiffs' Amended Consolidated Complaint (docket no. 184); VS Holding Company's January 10, 2011, Notice That Its Pending Motion To Dismiss And

Briefing In Support Apply To Plaintiffs' Amended Consolidated Complaint (docket no. 185); Steven Keith Vandebrake's January 10, 2011, Notice That His Pending Motion To Dismiss Applies To Plaintiffs' Amended Consolidated Complaint (docket no. 186); and Kent Stewart's and Great Lakes Concrete's January 10, 2011, Notice That [Their] Pending Motion To Dismiss And Brief In Support Apply To Plaintiffs' Amended Consolidated Complain[t] (docket no. 187). Third, the newly-added defendants moved to dismiss by joining in and incorporating by reference defendant GCC Alliance Concrete's Motion To Dismiss and supporting briefs. *See* Tri-State Ready Mix's and Chad Van Zee's January 11, 2011, Motion To Dismiss Plaintiffs' Amended Consolidated Complaint (docket no. 189). Finally, on January 31, 2011, the plaintiffs filed their own Notice Of Renewal Of Opposition To Motions To Dismiss (docket no. 200), renewing their arguments for denial of the Defendants' Motions To Dismiss.

The parties did not request oral arguments on the pending Motions To Dismiss in the manner required by applicable local rules. The court also has not found such oral arguments to be necessary, in light of the quality of the parties' briefing and the likelihood that attempts to set oral arguments in the court's crowded schedule on a date that would have been acceptable to all interested parties would likely unnecessarily delay proceedings further. Therefore, the court has considered the Motions To Dismiss on the written submissions of the parties.

## II. LEGAL ANALYSIS

### A. Standards For Dismissal Pursuant To Rule 12(b)(6)

The defendants' motions to dismiss are pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss on the

basis of "failure to state a claim upon which relief can be granted."[3]  In a recent decision, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),  a case that, like this one, involved class action claims of an antitrust conspiracy, the Supreme Court revisited the standards for determining whether factual allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a

---

[3] Effective December 1, 2007, Federal Rule of Civil Procedure 12 was "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." FED. R. CIV. P. 12, advisory committee's note.  The advisory committee notes make it clear that the "changes are to be stylistic only." *Id.*  The stylistic changes to Rule 12(b)(6) are in fact minimal, as Rule 12(b)(6) continues to authorize a motion to dismiss "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  Thus, the recent amendment did not change the standards for a Rule 12(b)(6) motion.

statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact), see, *e.g.*, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic*, 550 U.S. at 555-56 (footnote omitted); *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (instructing that "short and plain statement" requirement "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."). Thus, the Eighth Circuit Court of Appeals has recognized that, under *Bell Atlantic*, "To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level. . . .'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 555). To put it another way, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 570); *accord Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Bell Atlantic*, 550 U.S. at 557).

Nevertheless, the court must still "accept as true the plaintiff's well pleaded allegations." *Parkhurst*, 569 F.3d at 865 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)); *B&B Hardware, Inc.*, 569 F.3d at 387 ("[W]e 'assume[ ] as true all factual

allegations of the complaint'" (quoting *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)). The court must also still "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (post-*Bell Atlantic* decision). On the other hand, "[w]here the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997), for this standard in a discussion of Rule 12(b)(6) standards in light of *Bell Atlantic*).

Here, the defendants assert two grounds for dismissal of the plaintiffs' Amended Consolidated Complaint. First, the defendants contend that the plaintiffs have failed to plead a sufficient factual basis to establish their standing to sue on behalf of an alleged class of all individuals and entities who purchased ready-mix concrete directly from any of the defendants. Second, the defendants contend that the plaintiffs have alleged no factual basis to support an alleged four-plus year conspiracy among all of the defendants covering the entire "Iowa region." The court will begin its analysis with the defendants' second assertion, because, if dismissal is appropriate on that ground, the court need not consider whether the plaintiffs have adequately pleaded standing.

### B. The Pleading Of The Antitrust Conspiracy

#### 1. Arguments of the parties

##### a. The defendants' arguments

The defendants assert that the plaintiffs must plead both a conspiracy in violation of § 1 of the Sherman Act and the additional showings of standing, causation/impact, and antitrust injury required by § 4 of the Clayton Act. The defendants allege that the plaintiffs have alleged no facts to support a direct agreement among any of the defendants

other than the three separate and discrete agreements admitted in the individual defendant's plea agreements to criminal antitrust charges. They contend that the agreements admitted in the plea agreements are the following: (1) an agreement between VandeBrake/GCC Alliance and one other company to fix prices and to submit rigged and noncompetitive bids from June 2008 until March 2009; (2) an agreement between VandeBrake/GCC Alliance and a second company to fix prices and to submit rigged and noncompetitive bids from January 2008 until August 2009; and (3) an agreement between VandeBrake/Alliance Concrete/GCC Alliance and a third company to fix prices from January 2006 until August 2009. The defendants contend that the allegations of an industry-wide conspiracy in the entire (and undefined) "Iowa region" over a four-plus year period are inconsistent with the discrete agreements admitted in the plea agreements and, thus, must be disregarded. The defendants contend that the plaintiffs fail to allege any facts that could tie together the specific, discrete incidents of admitted misconduct and the overarching all-defendant four-plus-year conspiracy that the plaintiffs wish to prosecute. More specifically, the defendants point out that the plaintiffs do not allege that the defendants engaged in any parallel conduct, let alone any factual basis to conclude that any "plus factors" exist, and that they do not allege that the defendants ever systematically interacted with each other, much less that they had some mechanism to operate the alleged conspiracy, allocate its profits, and police its participants. The defendants assert that, unlike the plaintiffs in *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987 (E.D. Mich. 2010), the plaintiffs here offer only meager allegations in an attempt to support a wide-ranging conspiracy.

The defendants also contend that the plaintiffs have alleged no facts that would render the alleged conspiracy plausible. They contend that the guilty pleas of the individual defendants relate to limited agreements, not a wide-ranging conspiracy, and the plaintiffs have offered no facts to support their contention that the ready-mix concrete

industry in the "Iowa region" is highly concentrated in the hands of just a few major producers. They also contend that the wide-ranging conspiracy alleged is implausible, because ready-mix concrete is made on demand at batch plants for immediate use and must be poured within the time limits imposed by the chemical reactions that begin when water is added. The defendants point out that the plaintiffs have not alleged that all of the defendants have plants throughout the alleged market area, so that they necessarily compete with each other.

VS Holding adds that public records show, and the plaintiffs could not plead otherwise, that the ready-mix concrete business of its predecessor, Alliance Concrete, was transferred to GCC on January 14, 2008, so that its employees could not have engaged in any conspiracy after that date. VS Holding points out that the plaintiffs have not alleged any specific conduct during 2006 and 2007, the two years preceding its divestment of any ready-mix concrete business.

### b.    *The plaintiffs' response*

The plaintiffs counter that every defendant named to date has either admitted to price-fixing or been implicated, by a principal's admissions, in price-fixing in the ready-mix concrete market in northwest Iowa and into surrounding states during the same or overlapping periods of time. Thus, they contend that it is at least plausible that the defendants were part of a conspiracy among all of them to fix or raise ready-mix concrete prices, particularly given the host of offenses admitted, the unique suitability of the relevant ready-mix concrete market to price-fixing, and the fact that the defendants were competitors for the same customers, at least in the absence of a conspiracy. The plaintiffs argue that it is incredible that the defendants argue that the admitted felonies of the individual defendants, set out in carefully negotiated plea agreements, *protect* them from any inference of a broader conspiracy. More importantly, they argue that the admitted

illegal conduct is consistent with the overarching conspiracy that they allege. They point out that the *Package Ice* decision on which the defendants rely rejected an argument that the scope of an alleged civil antitrust conspiracy is defined by the criminal investigations or plea agreements concerning a criminal antitrust conspiracy.

The plaintiffs also argue that requiring them to plead the precise structure and details of the alleged conspiracy or its exact temporal and geographical scope would be inappropriate at this stage of the litigation. They contend that conspiracies are, by nature, secretive, so that the plaintiffs cannot be expected to know the precise circumstances of a conspiracy before having had a chance to conduct discovery. Moreover, the plaintiffs contend that they do not have to establish (or plead) a direct agreement among all defendants in order to allege a conspiracy among them. Rather, they contend that they have amply pleaded a "hub and spoke" conspiracy, in which VandeBrake served as the "hub," entering into price-fixing agreements with the other defendants.

Finally, the plaintiffs contend that VS Holding's separate argument that it could not have engaged in any antitrust conduct within the statute of limitations period for the plaintiffs' claims, because it sold its ready-mix concrete business on January 14, 2008, is wrong, because VS Holding can be liable for later acts done in furtherance of the conspiracy, even if it ceased its own involvement. The plaintiffs contend that mere sale of a business does not necessarily constitute withdrawal from a conspiracy.

### c.    *The defendants' reply*

In reply, the defendants reiterate their contention that the plaintiffs have not alleged any additional facts beyond those found in the plea agreements, only conclusory allegations, to support their contentions of a broader conspiracy. For example, the defendants point out that the plaintiffs have not alleged any factual basis for their contention that the ready-mix concrete market in Iowa is highly concentrated.

The defendants also dispute the plaintiffs' assertions that they have adequately pleaded a "hub and spoke" conspiracy theory. They contend that such a theory is used to treat a series of ostensibly vertical one-on-one agreements between a dominant buyer (the "hub") and several sellers (the "spokes") to boycott or otherwise disadvantage a competing buyer as actually being a horizontal, multiparty agreement among the sellers, but the plaintiffs here are complaining only of alleged horizontal agreements between or among ostensibly competing sellers. The defendants assert that there is no "rim" to the plaintiffs' "hub and spoke" conspiracy, because, even assuming there could be a "hub and spoke" conspiracy without a vertical relationship between the "hub" and the "spokes," the plaintiffs make no allegations whatsoever that any seller of ready-mix concrete agreed with another seller to fix prices if and only if one or more other sellers would also agree to fix prices. They also point out that the plaintiffs have not alleged any factual basis to believe that there was agreement among the "spokes."

VS Holding also argues, in its separate Reply, that courts have recognized that a sale of assets constitutes an effective withdrawal from an alleged antitrust conspiracy. VS Holding argues that, because GCC lacked any Iowa ready-mix concrete business prior to January 14, 2008, and VS Holding lacked one after that date, the plaintiffs cannot plausibly allege that those defendants were fixing prices with each other.

### 2. *Analysis*

#### a. *Pleading of an antitrust conspiracy*

The plaintiffs contend, among other things, that requiring them to plead the precise structure and details of the alleged conspiracy or its exact temporal and geographical scope would be inappropriate at this stage of the litigation, that is, prior to discovery. The Supreme Court recognized in *Bell Atlantic*, also a class action antitrust conspiracy case, pursuant to § 1 of the Sherman Act, that "it is one thing to be cautious before dismissing

21

an antitrust complaint in advance of discovery, . . . but quite another to forget that proceeding to antitrust discovery can be expensive." *Bell Atlantic*, 550 U.S. at 558. The Court explained that, in applying the general Rule 12(b)(6) standards, set out above, to a § 1 antitrust conspiracy claim, "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atlantic*, 550 U.S. at 556. This standard does not require "probability" at the pleading stage—nor would it necessarily require pleading of all of the details of the alleged conspiracy that discovery could reveal—but it *does* require "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* The Amended Consolidated Complaint does not meet this requirement.

### b.  *Absence of sufficient factual allegations*

The Supreme Court has reiterated "that lawful parallel conduct fails to bespeak unlawful agreement," so that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Id.* (adding, "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). Here, as the defendants contend, the Amended Consolidated Complaint does not even allege parallel conduct, but skips straight to conclusory allegations of an agreement among the defendants. *See* Amended Consolidated Complaint at ¶¶ 42-51. Such "a naked assertion of conspiracy in a § 1 complaint . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Bell Atlantic*, 550 U.S. at 557 (citing *DM Research, Inc. v. College of Am. Pathologists,* 170 F.3d 53, 56 (1st Cir. 1999), as stating, "[T]erms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation-for example, identifying a written agreement or even a basis for

inferring a tacit agreement, . . . but a court is not required to accept such terms as a sufficient basis for a complaint"). There is no "further factual enhancement" in the Amended Consolidated Complaint to push the allegations of an antitrust conspiracy across the line between possible and plausible. Indeed, allegations that, for the purpose of forming and effectuating their combination and conspiracy, the defendants and their co-conspirators "did those things which they combined and conspired to do, including, among other things, discussing, forming and implementing agreements to raise and maintain at artificially high levels the prices for Ready-Mix Concrete," Amended Consolidated Complaint at ¶ 44, is, as the defendants contend, merely a tautology, not an allegation of additional facts. Even the plaintiffs' allegations that, throughout the class period, the defendants and their co-conspirators conspired to set and reached agreements to set agreed-upon prices, to set agreed-upon price increases, and to submit non-competitive and rigged bids for ready-mix concrete sold in the Northern District of Iowa and elsewhere, *id.* at ¶¶ 51-52, are merely conclusory allegations of an agreement, not allegations of facts from which an agreement can reasonably be inferred. Similarly, allegations that the defendants concealed their agreement through secret meetings, *id.* at 56-57, are merely conclusory allegations providing no factual enhancement.

The defendants are correct that the only facts about the nature and operation of the alleged conspiracy to be gleaned from the Amended Consolidated Complaint are the facts in the plea agreements of the individual defendants. Even then, it is only by recourse to the plea agreements referenced in the Amended Consolidated Complaint that one can learn any factual details of antitrust conspiracies, and then only as to certain *bilateral* agreements. On the other hand, the plaintiffs are correct that the *Package Ice* decision on which the defendants rely held that civil antitrust litigation cannot be "circumscribed or defined by the boundaries of the criminal investigation or plea agreements" of some of the

alleged participants in the civil antitrust conspiracy. 723 F. Supp. 2d at 1011-12. That decision also held that "taken as part of the larger picture, and considering the parallel internal investigations that have resulted in the suspension of key executives, these guilty pleas [of certain alleged participants in the civil conspiracy] do enhance the expectation that discovery might lead to evidence of a nationwide illegal agreement among these same actors, one of whom is under active government investigation and admittedly does not sell product in southeastern Michigan." *Id.* at 1011. What is missing in this case, however, is the "larger picture" from which inferences of a wider conspiracy can be drawn from guilty pleas to separate bilateral conspiracies.

First, a "hub and spoke" conspiracy theory is a remarkably poor fit with the present allegations. In this case, there is no "vertical" relationship between the "hub," VandeBrake, an officer, director, or owner of one distributor of ready-mix concrete, and the various "spokes," other distributors of ready-mix concrete, from which to draw an inference of a broad "horizontal" conspiracy to harm another entity on the same level as the alleged "spokes." *See, e.g., Impro Prods., Inc. v. Herrick*, 714 F.2d 1267, 1279-80 (8th Cir. 1983).

Second, even assuming that a "hub and spoke" conspiracy theory might apply in the absence of a "vertical" relationship between the "hub" and "spokes," a more fundamental problem here is that there is no allegation of facts supporting the existence of an overall plan to fix prices or that each defendant had knowledge that others were involved in the conspiracy. *Cf. id.* at 1280 (evidence that none of the corporate defendants communicated with any of the others concerning the alleged target of the conspiracy until after that target commenced the lawsuit and that none of the corporate defendants knew that the "hub" had consulting agreements with any of the other corporate defendants precluded the court from concluding that there existed an overall plan to suppress the plaintiff as a competitor or that

each defendant had knowledge that others were involved in the conspiracy); *see also PSKS, Inc. v. Leegin Creative Leather Prods., inc.*, 615 F.3d 412, 420 (5th Cir. 2010) (concluding that reliance on a "hub and spoke" conspiracy theory, as formulated in *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928 (7th Cir. 2000),was "misguided" where the plaintiff did not allege an agreement among retailers to implement the policy in question, and in the absence of an assertion that retailers agreed to the policy among themselves, "there is no wheel and therefore no hub-and-spoke conspiracy, and that allegation was therefore properly dismissed"); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 331- (3d Cir. 2010) (rejecting the plaintiffs' reliance on a "hub and spoke" theory as formulated in *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 216-222 (1939), because even though an actionable horizontal conspiracy does not require direct communication among the competitors, it does require allegations of "facts plausibly suggesting a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement" (citations omitted), and likewise rejecting the plaintiffs' reliance on *Toys "R" Us*, because there was no indication that each alleged conspirator would refuse to act without common and concerted action by all of the others). Thus, the court need not decide whether a "hub and spoke" theory could properly be utilized in this case. *See id.* at 1279 n.14 (concluding that, because the plaintiff's evidence was insufficient to sustain a "hub and spoke" conspiracy theory, the court did not need to determine whether that theory could properly be utilized in that case).

Third, allegations of an overall conspiracy appear to be implausible in light of the nature of ready-mix concrete, as alleged in the Amended Consolidated Complaint at ¶¶ 22-23. As alleged, ready-mix concrete must be produced and delivered within a limited geographical area, such that it is not clear how all of the defendants *could* compete within an entire undefined "Iowa region," in the absence of specific factual allegations showing

that the defendants are, indeed, competitors within any geographical area, let alone some entire "Iowa region." Indeed, the plaintiffs do not even allege the geographical market in which any of the defendants operated or any overlap among their geographical markets, such that a wide-ranging conspiracy could be inferred. Bald allegations that the defendants are "competitors" certainly do not suffice to cross the line from possibility to plausibility.

In short, the plaintiffs' conclusory allegations fail to state a claim based on a § 1 antitrust conspiracy upon which relief can be granted.[4]

### 3.    *Dismissal or leave to amend*

In a final footnote in their Omnibus Opposition To Defendants' Motions To Dismiss (docket no. 163), the plaintiffs state that, if the court is inclined to grant the defendants' dismissal motions, they respectfully ask that any such dismissal be without prejudice and with leave to amend the complaint within a reasonable time. *See* Omnibus Opposition To Defendants' Motions To Dismiss (docket no. 163) at 17 n.14. The defendants do not respond to this request in their various Replies (docket nos. 167-169).

"Post-dismissal motions to amend are disfavored." *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liability Litig.*, 623 F.3d 1200, 1208 (8th Cir. 2010). As the Eighth Circuit Court of Appeals has recognized, "'[A]lthough a pretrial motion for leave to amend one's complaint is to be liberally granted, different considerations apply to motions filed

---

[4]Because the Amended Consolidated Complaint fails to state an antitrust conspiracy claim upon which relief can be granted for the reasons stated herein, which pertain to all defendants, the court finds it unnecessary to address VS Holding's further grounds for dismissal, except to note that the inadequacy of the present factual pleadings plainly extends to inadequacy of the pleadings to show that the antitrust conspiracy claim can be asserted against VS Holding, where VS Holding has divested itself of its ready-mix concrete business.

after dismissal.'" *Hawks v. J.P. Morgan Chase Bank*, 591 F.3d 1043, 1050 (8th Cir. 2010) (quoting *Dorn v. State Bank of Stella*, 767 F.2d 442, 443 (8th Cir. 1985)):

> "After a complaint is dismissed, the right to amend under Fed. R. Civ. P. 15(a) terminates." *Dorn*, 767 F.2d at 443.] "Although a party may still file a motion for leave to amend and amendments should be granted liberally, such a motion would be inappropriate if the court has clearly indicated either that no amendment is possible or that dismissal of the complaint also constitutes dismissal of the action." *Id.* (internal quotations and citation omitted). "A district court does not abuse its discretion in denying a plaintiff leave to amend the pleadings to change the theory of their case after the complaint has been dismissed under Rule 12(b)(6)." *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 629 (8th Cir. 1999); *see also Humphreys v. Roche Biomedical Lab., Inc.*, 990 F.2d 1078, 1082 (8th Cir. 1993) ("Leave to amend may still be granted, but a district court does not abuse its discretion in refusing to allow amendment of pleadings to change the theory of a case if the amendment is offered after summary judgment has been granted against the party, and no valid reason is shown for the failure to present the new theory at an earlier time.") (internal quotations and citation omitted).

*Hawks*, 591 F.3d at 1050.

The situation may be different, when the plaintiff seeks leave to amend prior to dismissal. *Id.* at 1051. Even then, however, more than a footnote in a resistance brief requesting leave to amend, if the dismissal motion is granted, may be required. The Eighth Circuit Court of Appeals recently addressed the adequacy of a "footnote" conditional request for leave to amend, as follows:

> [The plaintiff] never submitted a proposed amended complaint to the district court, nor did he proffer the substance of such an amended complaint until he filed his appellate brief. Instead, Lester merely included a footnote at the end of his

> response to Novastar's motion to dismiss stating that "[t]o the
> extent that the court finds the Complaint's allegations
> insufficient, plaintiffs respectfully request an opportunity to
> amend their claims." These circumstances mirror those
> present in *Clayton [v. White Hall Sch. Dist.*, 778 F.2d 457
> (8th Cir. 1985)], where we held that a district court properly
> denied a plaintiff leave to amend because she "did not submit
> a motion for leave to amend but merely concluded her
> response to [the defendant's] motion to dismiss with a request
> for leave to amend" and "did not offer a proposed amended
> complaint or even the substance of the proposed amendment to
> the district court." [778 F.2d at 460][.]

See *In re 2007 Novastar Fin., Inc., Sec. Litig.*, 579 F.3d 878, 884-85 (8th Cir. 2009). In

these circumstances, the Eighth Circuit Court of Appeals concluded that the district court's

denial of leave to amend the complaint was proper. *Id.* (noting that, after denial of his

"footnote" conditional request to amend, the plaintiff never filed a motion under Rules

15(a)(2), 59(e), or 60(b), seeking leave to file an amended complaint). Although

indications of a plaintiff's willingness to amend, if existing pleadings are found to be

deficient, does suggest that post-dismissal leave to amend should be granted, a conditional

request for leave to amend must include, or must be shortly followed, by indication of the

substance of the proposed amendment. *See Drobnak v. Andersen Corp.*, 561 F.3d at 778,

787-88 (8th Cir. 2009). On the other hand, in deciding whether or not to grant any post-

dismissal request for leave to amend, the court "may not ignore the Rule 15(a)(2)

considerations that favor affording parties an opportunity to test their claims on the

merits. . . ." *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th

Cir. 2009).

Here, the court is mindful that the plaintiffs offered no more than a "footnote"

conditional request for leave to amend in response to the defendants' Motions To Dismiss,

then filed an amended complaint while the Motions To Dismiss were pending that only added additional parties, but made no substantive changes. These circumstances do not suggest that the plaintiffs' indication of willingness to amend was more than *pro forma*, as the plaintiffs continued to stand on the sufficiency of their Amended Consolidated Complaint, even in the face of the defendants' challenges. *See In re 2007 Novastar Fin., Inc., Sec. Litig.*, 579 F.3d at 884-85; *Drobnak*, 561 F.3d at 787-88. Moreover, the court does not yet have an indication of the substance of any potential amendments that the plaintiffs would offer. *Id.*; *Drobnak*, 561 F.3d at 787-88. It is only because the court believes that the interests of justice may be best served by allowing further amendment, so that the plaintiffs' claims can be addressed on the merits, *see* FED. R. CIV. P. 15(a)(2); *Roop*, 559 F.3d at 824 (stating that the court may not ignore Rule 15(a)(2) considerations), that the court is inclined to grant leave for further amendment of the plaintiffs' Amended Consolidated Complaint.

The court concludes that the best course is to grant the plaintiffs a reasonable time within which to offer a proposed amended complaint, then determine whether the proposed amendment is sufficient to allow this case to proceed. A court does not abuse its discretion in denying a post-dismissal motion to amend where amendment would be futile. *In re Medtronic*, 623 F.3d at 1208. Any proffered "cure" of the deficiencies in the proposed amendment must be relevant and material to the claims in the case and remedy the deficiencies found by the court in the prior pleadings. *Detroit Gen. Retirement Sys. v. Medtronic, Inc.*, 621 F.3d 800, 809-10 (8th Cir. 2010). Thus, any proposed amendment must address the insufficiency of the factual allegations identified above.

## C.  The Pleading Of The Plaintiffs' Standing

The defendants also contend that the plaintiffs have failed to plead a sufficient factual basis to establish their standing to sue on behalf of an alleged class of all individuals and entities who purchased ready-mix concrete directly from any of the defendants.  The court need not reach this contention, because the court concluded, above, that the plaintiffs have failed to plead an antitrust conspiracy claim to which their standing might be relevant, but the court will consider a motion to amend the complaint.  Although the court has not separately analyzed the sufficiency of the plaintiffs' pleading of standing, the court has considerable doubt, in light of the defendants' challenges, that the plaintiffs have sufficiently pleaded standing, where, for example, they have not specifically alleged that any particular plaintiff purchased ready-mix concrete from any particular defendant during the class period, thus pleading a factual basis for their own antitrust injury.  The plaintiffs are cautioned to take into account, in any proposed amendment, the defendants' challenges to standing, just as they must take into account the deficiencies in their pleading of the antitrust conspiracy identified by the court.

## III.  CONCLUSION

The court concludes that the plaintiffs' pleading of an antitrust conspiracy is woefully lacking in factual allegations that would make their claim plausible.  While it is entirely possible that the plaintiffs have pleaded sufficient factual basis for claims against subsets of defendants for separate antitrust conspiracies, they have expressly relied on an "overarching" conspiracy among all of them that simply is not supported by any factual allegations in the present Amended Consolidated Complaint.  Therefore, they have failed to state an antitrust conspiracy claim upon which relief can be granted, and dismissal of the present antitrust conspiracy claim is appropriate.  *See* FED. R. CIV. P. 12(b)(6). However, that dismissal is, at least for now, without prejudice:  The plaintiffs will be

granted a reasonable period of time within which to move for leave to amend to address the deficiencies identified by the court (and additional deficiencies identified by the defendants, but not addressed by the court), and must accompany that motion for leave to amend with a proposed amended complaint.

THEREFORE,

1. Defendant GCC Alliance Concrete's September 17, 2010, Motion To Dismiss Plaintiffs' Consolidated Complaint (docket no. 149); defendant Steven Keith VandeBrake's September 17, 2010, Motion To Dismiss Plaintiffs' Consolidated Complaint (docket no. 150); defendant VS Holding's September 17, 2010, Motion To Dismiss (docket no. 151); defendant Great Lakes Concrete's and Kent Stewart's September 17, 2010, Motion To Dismiss Plaintiff's Consolidated Complaint (docket no. 153); and Tri-State Ready Mix's and Chad Van Zee's January 11, 2011, Motion To Dismiss Plaintiffs' Amended Consolidated Complaint (docket no. 189) are all **granted**, to the extent that the Amended Consolidated Complaint (docket no. 177) is **dismissed without prejudice**, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

2. The plaintiffs shall have **to and including March 29, 2011,** within which to file a motion for leave to amend their complaint, accompanied by a proposed amended complaint. If no such motion and proposed amended complaint are received by this deadline, this action will be dismissed with prejudice.

**IT IS SO ORDERED.**

**DATED** this 8th day of March, 2011.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA