**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| **IN RE: IOWA READY-MIX CONCRETE ANTITRUST LITIGATION** | **No. C10-4038-MWB (CONSOLIDATED CASES)** |

**PLAINTIFFS' BRIEF IN SUPPORT OF JOINT MOTION FOR**
**FINAL APPROVAL OF SETTLEMENT AGREEMENTS**

**I.      Introduction**

The Court has entered orders preliminarily approving three class-wide Settlement

Agreements: the "Alliance/Tri-State Settlement," the "Alliance/Great Lakes Settlement," and the

"Alliance/Siouxland Settlement" (collectively the "Settlements").[1]  Each of the Preliminary

Approval Orders certified a Settlement Class, directed notice of the Settlement to be provided to

members of the Settlement Class by direct mail and publication, and provided a means for Class

members to object to or exclude themselves from any of Settlements affecting their rights.[2]  The

Plaintiffs, together with each of the Defendants, have now jointly moved the Court for final

approval of each of the Settlements pursuant to Fed. R. Civ. P. 23(e).  *See* Declaration of Irwin

B. Levin in Support of Joint Motion for Final Approval of Settlement Agreements ("Levin

Dec."), submitted herewith, ¶ 2.

---

[1] The Settlements include: (i) the Settlement Agreement with Tri-State Ready Mix, Inc., VS Holding Company, f/k/a Alliance Concrete, Inc., GCC Alliance Concrete, Inc., Chad Van Zee and Steven Keith VandeBrake ("Alliance/Tri-State Settlement"); (ii) the Settlement Agreement with Great Lakes Concrete, Inc., VS Holding Company, f/k/a Alliance Concrete, Inc., GCC Alliance Concrete, Inc., Kent Robert Stewart and Steven Keith VandeBrake ("Alliance/Great Lakes Settlement"); and (iii) the Settlement Agreement with Siouxland Concrete Company, VS Holding Company, f/k/a Alliance Concrete, Inc., GCC Alliance Concrete, Inc. and Steven Keith VandeBrake ("Alliance/Siouxland Settlement").

[2] *See*, Order Preliminarily Approving Settlement, Certifying Alliance/Great Lakes Settlement Class, and Directing Notice (Dkt. 277), Order Preliminarily Approving Settlement, Certifying Alliance/Siouxland Settlement Class, and Directing Notice (Dkt. 279), and Corrected Order Preliminarily Approving Settlement, Certifying Alliance/Tri-State Settlement Class, and Directing Notice (Dkt. 281) (collectively "Preliminary Approval Orders").

The settling parties have complied with the terms of the Preliminary Approval Orders, issuing mailed and publication notice to each of the Settlement Classes, providing notice of the Settlements to relevant governmental authorities pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and providing access to information and settlement documents on a settlement website, http://iowaconcreteantitrustsettlement.com.  Only a tiny number of Class members have elected to exclude themselves from one or more Settlement Class, not a single member of any of the three Settlement Classes has objected to the terms of the Settlements, and no government official has opposed final approval.  Levin Dec. ¶ 3.

The apparent class-wide support for the Settlements is not surprising.  Despite an aggressive defense by eight corporate and individual Defendants, and the inherent complexity of three antitrust conspiracies spanning several years, Plaintiffs have secured Settlements providing a combined $18.5 million in settlement funds for the Settlement Classes.  This amount is well in excess of the estimated overcharges paid by members of each of the Settlement Classes according to the Plaintiffs' expert.  *See*, Amended Declaration of Russell Mangum (filed under seal) (Dkt. 229) ¶¶ 176-78.  Class Counsel respectfully suggest that this is an outstanding result for Class members that is readily characterized as fair, reasonable and adequate, and that the Court should grant the Joint Motion for Final Approval filed by the parties.  Levin Dec. ¶ 4.

## II.      Background and Settlement Terms

In previous filings, the Plaintiffs have presented the procedural and factual background necessary to support the final approval of the Settlements.  In particular, the Brief in Support of Unopposed Motion for Preliminary Approval of Settlement Agreements and Preliminary Certification of Settlement Classes (Dkt. 272-1), and Brief in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, the Reimbursement of Expenses, and Incentive Awards for Class Representatives (Dkt. 287-1), together set forth the nature of the Plaintiffs' and Class Members'

claims, the procedural chronology of the litigation, the discovery and investigation completed by Class Counsel, the motion practice of the parties, the mediation process and related settlement negotiations, and the terms of the three Settlements.  To avoid repetitive briefing, those filings are incorporated herein in support of the parties' joint motion for final approval.

However, to minimize the potential for confusion from three Settlement Agreements and three Settlement Classes, the following table summarizes the key aspects of each:

| ALLIANCE/SIOUXLAND SETTLEMENT | |
|---|---|
| **Settling Defendants** | Siouxland Concrete Company, VS Holding Company, f/k/a Alliance Concrete, Inc., GCC Alliance Concrete, Inc. and Steven Keith VandeBrake |
| **Settlement Class** | All individuals or entities who purchased ready-mix concrete directly from GCC Alliance Concrete, Inc.'s Le Mars North, Le Mars South, Remsen, Akron, Moville or Sergeant Bluff plants, or Siouxland Concrete Company's 11th Street and Steuben Street plants located in Sioux City, Iowa, or South Sioux City, Nebraska plant. |
| **Settlement Class Period** | July 1, 2008 through December 31, 2009 |
| **Settlement Class Representatives** | Frank Audino, Sioux City Engineering, City of Le Mars, Iowa, Brown Commercial Construction, Holtze Construction Company |
| **Defendants' Combined Settlement Payments** | $2,648,253 |
| ALLIANCE/TRI-STATE SETTLEMENT | |
| **Settling Defendants** | Tri-State Ready Mix, Inc., VS Holding Company, f/k/a Alliance Concrete, Inc., GCC Alliance Concrete, Inc., Chad Van Zee and Steven Keith VandeBrake |
| **Settlement Class** | All individuals or entities who purchased ready-mix concrete directly from the Hawarden, Orange City, Sioux Center, or Sheldon plants that Alliance Concrete, Inc. owned before January 14, 2008 and that GCC Alliance Concrete, Inc. has owned since that date, or Tri-State Ready-Mix, Inc.'s Rock Valley plant. |
| **Settlement Class Period** | January 1, 2006 through December 31, 2009 |
| **Settlement Class Representatives** | Frank Audino, Randy Waterman, Brown Commercial Construction and Holtze Construction Company |
| **Defendants' Combined Settlement Payments** | $10,730,335 |

| ALLIANCE/GREAT LAKES SETTLEMENT | |
|---|---|
| **Settling Defendants** | Great Lakes Concrete, Inc., VS Holding Company, f/k/a Alliance Concrete, Inc., GCC Alliance Concrete, Inc., Kent Robert Stewart and Steven Keith VandeBrake |
| **Settlement Class** | All individuals or entities who purchased ready-mix concrete directly from the Hartley, Lake Park, Sanborn, Sibley, or Spencer ready-mix concrete plants that Alliance Concrete, Inc. owned before January 14, 2008 and that GCC Alliance Concrete has owned since that date, or directly from Great Lakes Concrete Inc.'s Ocheyden, Milford, Spencer, or Spirit Lake Plants. |
| **Settlement Class Period** | January 1, 2006 through December 31, 2009 |
| **Settlement Class Representatives** | Brown Commercial Construction |
| **Defendants' Combined Settlement Payments** | $5,121,412 |

In exchange for the Settlement Payments, members of the Settlement Classes will grant releases to the Defendants for the claims asserted by the Plaintiffs in the Second Amended Consolidated Class Action Complaint (Dkt. 214) ("Second Amended Complaint"). The releases are strictly limited to those claims for which compensation is being provided by the Settlements. Thus, the releases do not include claims based on purchases from the Defendants' Ready-Mix Concrete plants other than those identified in the Settlement Class definitions, purchases outside of the Class Periods, or indirect purchases. The releases also do not include claims that are not related to antitrust or anticompetitive conduct, such as claims for personal injury, wrongful death, product defect, or breach of contract. The releases are granted by all Settlement Class members who do not elect to exclude themselves from the Class or Classes in which they are included.

## III.   Notice to the Settlement Classes and Class Member Responses

The Preliminary Approval Orders, *inter alia,* appointed Interim Co-Lead Counsel as Settlement Class Counsel with respect to each of the Settlements, approved the form and content

of notices to Settlement Class members, established deadlines for Settlement Class members to object to or exclude themselves from the Settlements, and directed Settlement Class Counsel to issue mailed and published notice to Settlement Class members in the form approved by the Court.  Levin Dec. ¶ 5.

To ensure effective notice to Settlement Class members, reliable and efficient claims administration, and management of the various Settlement Funds, Settlement Class Counsel has retained the firm of A.B. Data, Ltd., a company specializing in class action notice and administration.  Levin Dec. ¶ 6.  *See*, Declaration of Michelle M. La Count, Esq. ("La Count Dec."), submitted herewith, ¶¶ 1-4.  To accomplish the Court-approved notice of the Settlements, Settlement Class Counsel provided A.B. Data with copies of the Settlements, the Preliminary Approval Orders, and the court-approved form of mailed and published notice.  Class Counsel also provided A.B. Data with spreadsheets for each Settlement setting forth the known names and addresses of potential Settlement Class members, which were prepared from data provided by the Defendants during the course of discovery.  La Count Dec. ¶¶ 5-6, 9; Levin Dec. ¶ 6.

This information includes:  (i) for the Alliance/Siouxland Settlement Class, a list of 1,572 members and addresses; (ii) for the Alliance/Tri-State Settlement Class, a list of 5,173 members and addresses; and (iii) for the Alliance/Great Lakes Settlement Class, a list of 1,572 members and addresses.  La Count Dec. ¶ 6.  A.B. Data prepared the Settlement Class lists for mailing by standardizing the information provided by Defendants, and updating the class list addresses using NCOA[Link], a national database of address changes that is compiled by the United States Postal Service ("USPS").  La Count Dec. ¶¶ 7.  On August 19, 2011, A.B. Data delivered the finalized Settlement Notices – tailored to each Settlement – to the USPS to be mailed via First-Class Mail, postage prepaid.  La Count Dec. ¶ 9 and Ex. A.

As of October 12, 2011, Notices were mailed to 1,572 members of the Alliance/Siouxland Settlement Class, and 62 of the Mailed Notices have been returned by the USPS to A.B. Data as undeliverable as addressed ("UAA").  Among the UAA Notices returned, two had forwarding addresses and were resent.  La Count Dec. ¶ 10.

As of October 12, 2011, Notices were mailed to 5,172 members of the Alliance/Great Lakes Settlement Class, and 384 of the Mailed Notices have been returned by the USPS to A.B. Data as undeliverable as addressed ("UAA").  Among the UAA Notices returned, 17 had forwarding addresses and were resent.  La Count Dec. ¶ 10.

As of October 12, 2011, Notices were mailed to 5,173 members of the Alliance/Tri-State Settlement Class, and 323 of the Mailed Notices have been returned by the USPS to A.B. Data as undeliverable as addressed ("UAA").  Among the UAA Notices returned, 12 had forwarding addresses and were resent.  La Count Dec. ¶ 10.

On August 19 and 26, 2011, a Summary Notice of each of the Settlements was published in the *Sioux City Journal* in the form approved by the Court.  La Count Dec. ¶¶ 4, 15, and Exhibit B.  In addition, in order to accomplish the best published notice practicable under the circumstances, given the location of the plants from which Class members made purchases, and with the approval of Class Counsel, A.B Data caused the publication of Summary Notices in each Class' respective area newspapers as follows:

    a.   *Spirit Lake Dickinson Co. News,* on Wednesday, August 17, 2011, and August 24, 2011 (Alliance/Great Lakes Settlement);

    b.   *Sibley Osceola Co. Gazette-Tribune*, on Wednesday, August 17, 2011, and August 24, 2011 (Alliance/Great Lakes Settlement);

    c.   *Orange City Sioux Co. Capital-Democrat*, on Thursday August 18, 2011, and August 25, 2011 (Alliance/Tri-State Settlement);

   d.   *Spencer Daily Reporter*, on Thursday August 18, 2011, and August 25, 2011

         (Alliance/Great Lakes Settlement);

   e.   *Le Mars Daily Sentinel*, on Friday August 19, 2011, and August 16, 2011

         (Alliance/Siouxland Settlements); and

   f.   *Sheldon Northwest Iowa Review*, on Saturday August 20, 2011, and

         August 27, 2011 (Alliance/Tri-State Settlement and Alliance/Great Lakes

         Settlement).

La Count Dec. ¶15 and Exhibit C.

   A.B. Data was also instructed to establish an Internet website to provide information and

access to relevant documents for all of the Settlements.  On or about August 22, 2011, A.B. Data

established http://iowaconcreteantitrustsettlement.com for these purposes.  La Count Dec. ¶ 13;

Levin Dec. ¶ 7.  The website includes access to several documents in "portable document

format" (.pdf) for easy viewing and downloading, including Plaintiffs' Second Amended

Complaint, the Settlements, Settlement Notices, Preliminary Approval Orders, the Motion for an

Award of Attorneys' Fees, the Reimbursement of Expenses, and Incentive Awards for Class

Representatives, and supporting Brief and Declaration.  La Count Dec. ¶ 13; Levin Dec. ¶ 7.

The website also includes general information regarding the case and its current status,

information related to the three Settlement Agreements and Settlements Classes, and deadlines

for requesting exclusion from the Classes, objecting to the Settlements or appearing by counsel.

La Count Dec. ¶ 13; Levin Dec. ¶ 7.  Class Counsel have instructed A.B. Data to post this Brief

on the website as soon as possible.  Levin Dec. ¶ 7.

   Since notice of the Settlements was issued by mail and publication, Settlement Class

Counsel have responded to numerous inquiries from, and provided additional information to,

Settlement Class members.  Inquiries have come from individuals, businesses, government

subdivisions and counsel representing one or more Class members.  Levin Dec. ¶ 8.  In addition,

documents hosted on the settlement website have been downloaded several times.  La Count

Dec. ¶ 13.

The Preliminary Approval Orders established a deadline of 30 days after mailed notice

for Settlement Class members to exclude themselves from the Settlements ("Exclusion

Deadline").  Settlement Class members were advised of the Exclusion Deadline, October 3,

2011, in the Mail and Summary Notices.  As of the Exclusion Deadline, only 11 Settlement

Class members had exercised their right to be excluded from one or more of the Settlements.

*See*, Plaintiffs' List of Persons and Entities Requesting Exclusion from Settlement Classes, filed

herewith.  Moreover, for each Settlement, the Settlement Class members requesting exclusion

from that Settlement accounted for a very small percentage of the total sales included in the

Settlement.  Levin Dec., ¶ 9.

The Preliminary Approval Order also established a deadline 30 days after mailed notice

for Settlement Class members to object to the Settlements ("Objection Deadline").  Settlement

Class members were advised of the Objection Deadline, October 3, 2011, and the manner for

submitting objections, in the mailed and published notices.  As of the Objection Deadline, no

objections to any of the three Settlements had been served upon Settlement Class Counsel or

filed with the Court, and no untimely objections have been received by Settlement Class Counsel

after the Objection Deadline.  Levin Dec. ¶ 10.

Finally, Settlement Class Counsel have also been informed by counsel for the Defendants

that notice of the Settlements has been issued by the Defendants to relevant government

authorities pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

Pursuant to the Settlements, Defendants are to file a report of CAFA Notice on October 24,

2011.  Levin Dec. ¶ 11.

**IV.      Plan of Distribution**

In the event the Court grants final approval to the Settlements, Plaintiffs and Class Counsel will promptly move the Court for approval of a plan of distribution.  The elements of the plan of distribution are not complicated and are relevant to the Motion for Final Approval. Therefore, Class Counsel provide an overview of the plan of distribution here.  Preparation for distribution is well underway and, with the assistance of the Claims Administrator, Class Counsel believe they have arrived at a fair and efficient method of distributing settlement funds to Class members that utilizes information obtained by the Plaintiffs during the litigation.  Levin Dec. ¶ 12.

As set forth in the Settlement Agreements, Plaintiffs and Class Counsel have requested that the Settlement funds be applied in part to pay Court-approved attorneys' fees, costs of litigation advanced by Plaintiffs' counsel, and incentive payments to each of the named Plaintiffs.  Additionally, an estimated sum will be held back to cover costs of administering the claims process.  For each Settlement, the remainder of the Settlement funds, referred to herein as the "Net Settlement Funds," will be distributed to Settlement Class Members who submit timely and properly executed Claim Forms, on a *pro rata* basis relative to the amounts of their Qualifying Purchases.  A "Qualifying Purchase" is a *direct* purchase by a Settlement Class Member of ready-mix concrete from one or more of the Defendant company plants identified in the Settlement Class definitions, at any time during the Class Period.  Levin Dec. ¶ 13.

For each Settlement, a Settlement Class member's *pro rata* percentage of the Net Settlement Funds will be calculated by dividing the amount of their Qualifying Purchases by the total amount of Qualifying Purchases of all Settlement Class Members who submit Qualifying Claims for that Settlement, using the following simple formula:

$$\frac{\text{Class Member's Qualifying Purchases}}{\text{Total Qualifying Purchases}} = \begin{array}{c}\text{Class Member's } \textit{Pro Rata}\\ \text{Percentage of Net Settlement Funds}\end{array}$$

The plan of distribution, and this distribution calculation, will be applied independently for each Settlement. However, a person or company may well be a member of more than one Settlement Class, and thus may submit a Claim Form, and receive a *pro rata* distribution, from one, two or all three of the Settlements depending on their purchases.  Levin Dec. ¶ 14.

Because the Sherman and Clayton Acts provide for joint and several liability among all co-conspirators, money recovered from *any* of the Defendants in any of the Settlements will be distributed to customers of *all* of the Defendants who are within the relevant Settlement.  Levin Dec. ¶ 15.  *See, e.g., In re Brand Name Prescription Drugs Antitrust Litig.,* 1999 WL 639173,*4-5 (N.D. Ill.) (approving *pro rata* distribution using purchases from all defendants, including non-settling defendants).  Thus, for each Settlement, purchases from all Defendants will be taken into consideration with equal weight when calculating the amounts of Settlement Class members' Qualifying Purchases.  Levin Dec. ¶ 15.

Additionally, the proposed *pro rata* distribution of the Settlement Funds is consistent with distribution plans approved in similar price-fixing litigation.  *See, e.g., Brand Name,* 1999 WL 639173,*4; *In re Airline Tickets Commission Antitrust Litig.,* 953 F.Supp. 280, 284-85 (D. Minn. 1997) (*pro rata* distribution plan was "cost-effective, simple and fundamentally fair); *In re Corrugated Container Antitrust Litig.,* 556 F.Supp. 1117, 1129 (S.D. Tex. 1982) (approval of *pro rata* distribution based on valid claims of allowable purchases).

Consistent with the overarching goal of distributing the Net Settlement Funds to Settlement Class members in a way that is fair, efficient, accurate, and as simple as possible for Class members, the distribution plan proposes to take advantage of robust available sales data already produced by the Defendant companies to determine the amounts of Settlement Class

members' Qualifying Purchases.  For each Settlement, the distribution plan will utilize this data

by sending *customized* Claim Forms to known Settlement Class members that include the

amounts of their known Qualifying Purchases, according to available data, from each of the

Defendant companies.  A Settlement Class member will then be given an opportunity to check

this presumptive amount of purchases against their own records and either accept the

presumptive amount or provide an alternative figure and supporting documentation.  Levin Dec.

¶ 16.

    For some sales, additional information may be needed from Settlement Class members in

order to properly allocate Qualifying Purchases.  In these instances, available purchase

information will be provided to the Class member with instructions on how to state the allocation

of the purchases according to their own documentation or knowledge.  If necessary, the Claims

Administrator will work with Class members to assist them in this process.  Levin Dec. ¶ 17.

    A "General Claim Form" – without customer-specific information included – will also be

made available to persons or entities that believe they made purchases of ready-mix concrete

from the Defendant companies during a Class Period, but for whom electronic data does not

reflect purchases.  The General Claim Form will be readily available upon request from the

Claims Administrator and on the settlement website.  Potential Settlement Class members will be

asked to provide the amounts of their purchases from each of the Defendant companies, and to

submit the records upon which those amounts are based.  Class Counsel and the Claims

Administrator will work together to assess the validity of General Claim Forms based on the

records submitted by those claimants and, if available, alternative records of the Defendant.

Levin Dec. ¶ 18.  In the three respective settlement agreements, Defendants agreed to cooperate

in this process.  *See* Alliance/Siouxland Settlement Agreement, p. 26, ¶ 42(f); Alliance/Tri-State

Settlement Agreement, pp. 24-25, ¶ 42(e); and Alliance/Great Lakes Settlement Agreement, p. 25, ¶ 42(e).

Both the General Claim Form and the Custom Claim Forms will be accompanied by information about the case and Settlements, eligibility to receive a share of the Settlement funds, how the Settlement funds will be distributed, and instructions for completion of Claim Forms. The Claim Forms will also provide a toll-free telephone number and the settlement website address from which potential Settlement Class Members can obtain additional information about the Settlements and the claims process, or to obtain assistance with completing and submitting Claim Forms. Class Counsel have been and will remain available to answer questions that may arise through the conclusion of this case. Levin Dec. ¶ 19.

Potential Settlement Class members will be instructed to send their completed Claim Forms to the Claims Administrator, A.B. Data, postmarked by a date certain that is 60 days after the Claim Forms are first mailed. The Claims Administrator will follow common guidelines to determine: (1) whether each submitted Claim Form was completed, signed and timely submitted; (2) whether each submitted Claim Form provides the necessary information to support a Qualifying Claim, and, if so, the amount of the Qualifying Purchases; and (3) the amount payable to each Settlement Class Member that has submitted one or more Qualifying Claims. Potential Class members will be provided a reasonable opportunity to correct any deficiencies. Levin Dec. ¶ 20.

## V.      Class Certification

In the Preliminary Approval Orders, the Court conditionally certified three Settlement Classes, one for each of the Settlements. The Court certified the following Alliance/Tri-State Settlement Class:

> All persons or entities who purchased Ready-Mix Concrete from January 1, 2006 through December 31, 2009 directly from the Hawarden, Orange City, Sioux Center, and Sheldon plants that Alliance Concrete owned before January 14, 2008 and that GCC Alliance has owned since that date, and the Tri-State Rock Valley plant, but excluding federal government entities, Defendants named in the Second Amended Consolidated Class Action Complaint and their co-conspirators and respective predecessors, parents, subsidiaries, and affiliates.

The Court also appointed Plaintiffs Brown Commercial Construction, Inc., Frank Audino Construction, Inc., Randy Waterman, and Holtze Construction Company as Settlement Class Representatives and Interim Co-Lead Counsel as Settlement Class Counsel.

The Court also conditionally certified the following Alliance/Great Lakes Settlement Class:

> All persons or entities who purchased Ready-Mix Concrete from January 1, 2006 through December 31, 2009 directly from the Hartley, Lake Park, Sanborn, Sibley, and Spencer plants that Alliance Concrete owned before January 14, 2008 and that GCC Alliance has owned since that date, and the Great Lakes Ocheyden, Milford, Spencer, or Spirit Lake plants, but excluding federal government entities, Defendants named in the Second Amended Consolidated Class Action Complaint and their co-conspirators and respective predecessors, parents, subsidiaries, and affiliates.

The Court also appointed Plaintiff Brown Commercial Construction, Inc. as Settlement Class Representative and Interim Co-Lead Counsel as Settlement Class Counsel.

And the Court conditionally certified the following Alliance/Siouxland Settlement Class:

> All persons or entities who purchased Ready-Mix Concrete from July 1, 2008 through December 31, 2009 directly from GCC Alliance's Le Mars North, Le Mars South, Remsen, Akron, Moville and Sergeant Bluff plants, and the Siouxland 11th Street and Steuben Street plants located in Sioux City, Iowa and the South Sioux City, Nebraska plant, but excluding federal government entities, Defendants and their co-conspirators, and Defendants' respective predecessors, parents, subsidiaries, and affiliates named in the Second Amended Consolidated Class Action Complaint.

The Court appointed Plaintiffs Frank Audino Construction, Inc., Sioux City Engineering Co., the City of Le Mars, Iowa, Brown Commercial Construction, Inc., and Holtze Construction

Company as Settlement Class Representatives and Interim Co-Lead Counsel as Settlement Class Counsel.

The Court should confirm the conditional certification of the three Settlement Classes for purposes of final approval, the entry of final judgments and administration of the Settlements. As set forth in Plaintiffs' Brief in Support of Preliminary Approval, the standards for certification of settlement-only class are well-established.  In order to be certified under Rule 23, proposed classes must meet all four requirements of Rule 23(a) and one of the three sub-sections of Rule 23(b).  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).  Rule 23's standards for class certification – apart from consideration of whether the case would be manageable to try as a class action – are equally applicable and rigorous in the settlement context.  *Id.,* 521 U.S. at 620.  In *Amchem*, the Supreme Court noted that Rule 23(b)(3)'s predominance requirement is "readily met" in antitrust cases like this one.  *Id.*, 521 U.S. at 625.  Indeed, in *Amchem,* the United States Supreme Court recognized that "[s]ettlement is relevant to class certification."  *Id.*, 521 U.S. at 619.  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Id.* at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

In support of preliminary approval of the Settlements, the Plaintiffs incorporated their Brief in Support of Plaintiffs' Motion for Class Certification ("Class Brief"), the Declaration of Irwin B. Levin in Support of Plaintiffs' Motion for Class Certification "Levin Class Declaration"), and the Amended Report of Plaintiffs' expert, Russell Mangum, Ph.D. ("Amended Mangum Report").[3]  Instead of attempting to summarize 80 pages of briefing and

---

[3] *See* Brief in Support of Plaintiffs' Motion for Class Certification and the Declaration of Irwin B. Levin in Support of Plaintiffs Motion for Class Certification, filed under seal on April 1, 2011, (Dkt. 217, 218), and the Amended Declaration of Russell Mangum, filed under seal on April 12, 2011.  (Dkt. 229).

supporting materials, Plaintiffs again incorporate herein by reference the Class Brief, Levin Class

Declaration and Amended Mangum Report in support of class certification for purposes of final

approval of the Settlements.

For each of the proposed Settlement Classes, the record now includes a detailed

assessment of each element of Rule 23(a) and (b), supported by an appendix of supporting

documentary evidence and a detailed expert report.  Plaintiffs have presented cogent argument

and supporting evidence establishing numerosity (Class Brief at 61), commonality (*id*. at 61-64),

typicality (*id*. at 64-66), adequacy (*id*. at 66-67), predominance (*id*. at 68-78), and superiority (*id*.

at 78-80) – supported by the detailed economic analysis of Mr. Mangum.  Importantly, the

materials filed in support of class certification for purposes of litigation seek the very same direct

purchaser Classes that are requested in the Settlements and have been conditionally certified by

the Court.  Class Counsel also respectfully submit that the materials previously submitted to the

Court in support of their appointment as Interim Co-Lead Counsel, and their conduct and

accomplishments in the litigation to date, warrant their continued appointment under Fed. R. Civ.

P. 23(g) as Class Counsel for each of the Settlement Classes.

In addition to satisfying the requirements of Rule 23, the Settlement Classes also permit a

meaningful application of the remedies provided under the antitrust laws.  As one district court

correctly observed, it would be "extremely difficult to bring an antitrust action against six

[industrial defendants] without the financial aid made possible by the class action device.  Few

are the individual claimants with a sufficient interest at stake or resources to bring a suit

requiring proof of a conspiracy among business corporations." *Minnesota v. U.S. Steel Corp*., 44

F.R.D. 559, 572 (D. Minn. 1968).  The Court should therefore confirm the certification of the

Settlement Classes, permitting a distribution of the generous benefits obtained for the Classes

under the Settlements.

VI.     **Final Approval**

When applying Rule 23 to consider settlement approval, "the district court acts as a fiduciary, serving as a guardian of the rights of absent class members."  *In re Wireless Telephone Federal Cost Recovery Fees Litigation,* 396 F.3d 922, 932 (8th Cir. 2005), citing *Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975).  Nonetheless, settlements are strongly favored by the courts as a method of resolving litigation, *Justine Realty v. American Nat. Can Co.,* 976 F.2d 385, 391 (8th Cir. 1992), and in class actions the policy favoring settlements has been found to be particularly strong:

> In the class action context in particular, "there is an overriding public interest in favor of settlement." Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977).  The U.S. Court of Appeals for the Eighth Circuit has held that settlements should be deemed presumptively valid.  *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1148 (8th Cir. 1999) ("[S]trong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.")

Court approval may be granted to a class settlement only after a hearing and a finding that the settlement is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e).  "A district court is required to consider four factors in determining whether a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement."  *In re Wireless Telephone,* 396 F.3d at 932, citing *Grunin,* 513 F.2d at 124; *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988).  When applied

16

to the facts and circumstances of this case, each of these factors supports final approval of the three Settlements.

In support of preliminary approval, the Plaintiffs explained why the first three factors support approval of the Settlements.  For example, while the criminal guilty pleas, the record on sentencing and the investigative materials obtained from the Federal Bureau of Investigation ("FBI") and Department of Justice ("DOJ") greatly added to the strength of the Plaintiffs' claims, substantial risks of non-recovery remained.  Plaintiffs would be required to obtain and defend class certification, succeed at trial in proving three distinct conspiracies against multiple and overlapping Defendants, establish damages in a meaningful amount, defend any class certification and judgment on appeal and eventually attempt collection of the judgment or judgments against several defendants, including individuals.  Thus, the merits of the plaintiff's case, weighed against the terms of the settlement, support final approval.  *In re Wireless Telephone,* 396 F.3d at 932.

Final approval of the Settlements is also supported by the Defendants' financial condition.  *Id.*  As explained in support of preliminary approval, Class Counsel reviewed financial information for most Defendants, and in one instance employed a Certified Public Accountant to review financial records and interview a Defendant representative.  Although many or all Defendants are liquidating or even retrieving already-transferred assets in order to pay their settlement amounts, including assets that would be difficult or impossible to reach to satisfy a judgment, none of the Settlement amounts reflect a significant discount based upon a Defendant's inability to pay.  Class Counsel are therefore confident that Defendants' settlement obligations are consistent with, or may even test, their financial condition and ability to pay.

The complexity and expense of further litigation also support final approval.  *Id.*  As reflected by the risks of litigation discussed above, the challenges of further litigation would be

complex and would entail substantial expense.  The complexity and expense of continued

litigation would only be enhanced when presenting the case to a jury on behalf of three separate

classes for three separate antitrust conspiracies.  While confident that they would prevail if

litigation continued, Plaintiffs suggest that these difficult realities support final approval of the

Settlements.

Finally, because notice had not yet been provided to Class members, Plaintiffs did not

address the fourth factor, the amount of opposition to the Settlements.  In this respect, the

Settlements are somewhat remarkable.  Even the most generous of class action settlements is

usually met with at least some objections, even if only from those who are suspicious or critical

of class action procedure in general.  Here, despite direct mail notice issuing to thousands of

Class members, and twice-published notice in seven newspapers, not a single objection has been

filed or otherwise received by Class Counsel.  Moreover, only eleven Class members elected to

exclude themselves from the Settlements, and for each Settlement these excluded Class members

accounted for a tiny percentage of the total ready-mix concrete purchases covered by the

Settlement.  The virtual absence of opposition to the Settlements weighs strongly in favor of final

approval.

Each of the Settlements creates a Settlement fund well in excess of the Plaintiffs'

economic expert's estimation of damages, despite substantial litigation risks and serious limits

on some or all Defendants' ability to pay.  Each Settlement provides monetary relief to a

carefully-defined class of persons directly impacted by the Defendants' admitted criminal

conduct, who will benefit from a claims process designed to minimize the effort required of

Class members while maximizing participation.  And each Settlement carefully releases only

those claims for which compensation has been obtained.  The Court should therefore grant the

parties' joint Motion for Final Approval.

## VII.    Conclusion

In light of the foregoing, Plaintiffs respectfully request that the Court grant final approval of the Settlements, confirm the certification of the Settlement Classes, and enter the Order and Final Judgments in the form attached to the Settlements as Exhibit "D".


Respectfully submitted,

_/s/ Irwin B. Levin_
Irwin B. Levin
Scott D. Gilchrist
COHEN AND MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN  46204
Telephone: (317) 636-6481
Facsimile: (317) 636-2593
ilevin@cohenandmalad.com
sgilchrist@cohenandmalad.com

_/s/ Gregory P. Hansel_
Gregory P. Hansel
Randall B. Weill
Joshua R. Carver
PRETI, FLAHERTY, BELIVEAU  &
PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000
Facsimile: (207) 791-3111
ghansel@preti.com
rweill@preti.com
jcarver@preti.com


**_Settlement Class Counsel_**                    **_Settlement Class Counsel_**


Mark L. Zaiger
Jennifer E. Rinden
SHUTTLEWORTH & INGERSOLL, P.L.C.
115 Third Street SE, Suite 500
P.O. Box 2107
Cedar Rapids, IA  52406-2107
Telephone: (319) 365-9461
Facsimile: (319) 365-8564
MLZ@ShuttleworthLaw.com
JER@ShuttleworthLaw.com


**_Plaintiffs' Liaison Counsel_**

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2011, the attached document was electronically transmitted to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all registered counsel of record.

/s/ *Irwin B. Levin*
Irwin B. Levin
COHEN AND MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN  46204
Telephone: (317) 636-6481
Facsimile: (317) 636-2593
ilevin@cohenandmalad.com